IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

OLIVER WENDELL WATSON, JR.,

Plaintiff,

v.  CIVIL ACTION NO. 5:09CV71

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,

Defendant.

## REPORT AND RECOMMENDATION/OPINION

Plaintiff Oliver Wendell Watson, Jr. ("Watson"), *pro se*, brought this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), to obtain judicial review of a final decision of the Commissioner of Social Security ("Defendant," and sometimes "Commissioner") denying his claims for benefits pursuant to the Social Security Act, 42 U.S.C. §§ 401-433, 1381-1383f. The matter is awaiting decision on a Motion to Dismiss filed by Defendant Commissioner on December 9, 2009 [Docket Entry 21], and has been referred to the undersigned United States Magistrate Judge for submission of proposed findings of fact and recommended disposition. 28 U.S.C. § 636(b)(1)(B); Fed. R. Civ. P. 72(b); L.R. Gen. P. 86.02.

### Procedural History

This matter is before the undersigned pursuant to a Motion to Dismiss filed by Defendant Commissioner of Social Security on December 9, 2009 [Docket Entry 21]. The Court sent a

1

Roseboro Notice to Plaintiff Oliver Wendell Watson, Jr. ("Watson") on October 15, 2009 [Docket Entry 24]. Watson filed his Response on November 12, 2009 [Docket Entry 28].

As background, On June 26, 2009, the within action was initiated by Oliver Wendell Watson's filing of an unsigned complaint (A Civil Cover Sheet), in blank, together with other documents, asserting unspecified claims against the Commissioner of Social Security [Docket Entry 1]. Thereafter, a summons was issued [Docket Entry 5] and executed on the Commissioner of Social Security on July 16, 2009 [Docket Entry 8]. A complaint comprised of yet another Civil Cover Sheet, but signed, with attachments, and referring to Docket Entry Number 1, was filed by Watson against Defendant on July 17, 2009, and, on the same date, a sixty-day summons for an amended complaint was issued to Defendant [Docket Entries 9 and 10, respectively]. On July 24, 2009, Watson filed copies of additional paperwork and undecipherable claims for relief.

It appearing to the Court that Watson and/or his representative was not complying with the rules, and it further appearing that Watson's complaints against the Commissioner were incomprehensible, the Court ordered the plaintiff, Oliver Wendell Watson, Jr., individually, and by his representative, Sue Watson,[1] and the Assistant United States Attorney of the Northern District of West Virginia assigned to the within action appear in the United States Magistrate Judge's Courtroom for the conduct of a Rule 16 conference. Watson appeared *pro se* along with his mother, Sue Watson, and Helen Altmeyer appeared for the Commissioner.

After an unsuccessful attempt at having Watson or his mother explain the nature of the claims that were being made and the amount that was being claimed, the Court ordered Watson to file an amended or supplemental complaint within thirty days. The amended complaint was to

---

[1] The Court was not aware at the time that Watson was not a minor and that Mrs. Watson was not his legal guardian.

identify what money Watson claimed was owed him by SSA; identify the time frame covered by his claim; identify the type of benefit program upon which his claim was based; identify all prior applications, hearings, and decisions on his claims, including but not limited to any decisions which impacted the payment of the funds for which he now sought reimbursement; and otherwise outlining his claim in a clear and comprehensive manner. On September 3, 2009, Watson filed a "Supplemental Complaint" [Docket Entry 18].

The substance of the Complaint is boiled down in this statement by Watson:

> On 6-16-06 Judge Pieggi James[2] told Oliver W. Watson Jr. XXX-XX-XXXX that he had some money coming to him for back SSI since he started getting SSI. That was in 1979. I have called Social Security several times, and also went to Social Security office in East Liverpool, Ohio. This has been going on for 2 years. I recently called the payment center I spoke to Kathy. She told me she would send and get Oliver's file it would take a little time to get his file and they would go back to 1979 and let us know. Now it was been awhile. We have never heard from her or anyone else from the payment center. When we went to East Liverpool Ohio they said it came up on the computer that it was in the payment center, that was a while ago. We have been up at Social Security about 6 or 7 times about this. The same thing keeps coming up on the computer. Please help us we can use the money. We also went to Stubenville [sic] Ohio Social Security about this problem. Why did Judge tell us this when we can use the money for my son. It is unjust and unfair to tell us this.

The complaint was signed by Watson and his mother, Sue Watson.

---

[2]Neither Watson nor his mother could identify at the hearing what type of Judge "Pieggi James" was or even where he or the hearing was located. Neither could identify the type of hearing they had attended. Upon much investigation undertaken by the Court itself, it was determined that Watson was referring to Social Security Administrative Law Judge James Pileggi, who is based in Pennsylvania, and that the hearing to which they referred concerned Watson's Social Security benefits.

## Findings of Fact

According to records submitted by Watson, he received no money in Supplemental Security Income benefits ("SSI") for the years 1979 and 1980 [DE18-6], but began receiving SSI in January 1981, and continued receiving SSI through at least August 2009.

Watson filed an application for Social Security Disability benefits ("DIB") in 2001 (DE 18-1). He was subsequently awarded benefits based on this application, including past-due DIB benefits dating back to 1990, totaling $38,058.00. (Id.). On July 5, 2003, however, SSA wrote a letter to Watson, advising him that he would be receiving a check for only $2,885.39, because SSA had withheld money from the past-due disability benefits ("DIB") (DE 29-1). The claim was under Watson's own Social Security Number. The letter explained that past-due DIB benefits had been withheld for June 1990 through May 2003, because SSA determined Watson had received Supplemental Security Income ("SSI") benefits for the period July 1990 though August 2003. The letter further stated: "Allowing for your Social Security [DIB] benefits, we should have paid you less in SSI money. Because of this, we are reducing your [DIB] benefits by $35,172.61. In your next check we will pay you the amount due for this period [$2,885.39]."

Watson requested a hearing regarding this matter, which was held by Administrative Law Judge James J. Pileggi in June 2006 (DE18-3 at p. 6). Watson writes in response to the Roseboro Notice this Court sent pursuant to the Motion to Dismiss:

> The reasons for Oliver's hearing in Pittsburgh with Judge Pieggi [sic] was Mrs. Stevens found a wrong amount of money Oliver was getting in his check. They said he had $35,172.61 due him for the mistake.[3]
> The reasons for this problem now, I believe they are confusing this

---

[3]The undersigned respectfully disagrees with Mrs. Watson's interpretation of the "mistake," as it is clear the $35,172.61 was not "due" to Watson but was actually to be withheld from Watson's benefits.

4

> problem we are coming to court for with the mistake Mrs. Stevens
> found. They sent Oliver 2,885.39 withheld money from his benefits.
>
> Therefore because of what Judge Pieggi said verbally to Oliver & Sue
> Watson about his SSI, I believe Oliver should have his money that is
> due him from 1979- on as Judge Pieggi told us.

The hearing before Administrative Law Judge James Pileggi was held in June 2006. He issued an unfavorable decision on August 15, 2007. The decision itself is not in the record but it is clear from Mrs. Watson's letter to the Appeals Council appealing the decision, as well as Watson's Response to the Roseboro Notice, all of which are contained in Watson's own pleadings, that the ALJ's written decision was based on the DIB application and did not include any mention of past SSI benefits or any benefits at all further back than 1990. On October 28, 2008, Mrs. Watson sent a letter to the Appeals Council stating:

> We don't agree with the decision on Oliver's hearing in Pittsburgh on
> 6-16-06 with Judge Pieggi James. Judge James verbally assured us
> that Oliver has money coming to him from SSI dating from October
> 1979 when Oliver first started receiving SSI.

(Emphasis added).

The next document appearing chronologically in Watson's pleadings is a "Decision of the Appeals Council" dated April 7, 2009, which states:

> Notice was previously sent on February 13, 2009, advising of the
> Appeals Council's review of the Administrative Law Judge's
> Decision issued on August 15, 2007, with respect to additional
> retroactive benefits pursuant to authority granted by Social Security
> Administration Regulations 20 CFR 404.970. In that notice, the
> Appeals Council proposed to issue a decision finding that the
> claimant is not entitled to additional retroactive benefits and to
> provide a more thorough explanation in that regard. The Council
> also notified the claimant that it would consider any comments or
> new and material evidence that the claimant submitted within 30 days
> from the date of the notice. In a letter dated March 10, 2009, the
> claimant's mother, Sue Watson, restated issues addressed in the

notice of February 13, 2009, and requested appearance before the Appeals Council. Contrary to Sue Watson's allegation that the Administrative Law Judge informed her of the claimant's entitlement to additional benefits, an audit of the hearing shows that the Administrative Law Judge discussed "*only*" the *possibility* of benefits payable on the claimant's father's record and the claimant's need to file an application for those benefits. (Emphasis in original).

. . . .

The Appeals Council adopts the Administrative Law Judge's statements regarding the pertinent provisions of the Social Security Act, Social Security Administration Regulations, Social Security Rulings, and Acquiescence Rulings the issues in the case, and the evidentiary facts, as applicable.

In a letter dated July 5, 3003, the Social Security Administration determined that the claimant was entitled to $2,884.39 of the $38,058.00 in <u>disability benefits</u> due him from June 1990. It is the decision of the Appeals Council that the claimant, <u>based on his application filed on August 16, 2001</u>, is not entitled to additional retroactive benefits <u>for the period July 1990 through July 2003.</u> The remainder of the past due <u>disability benefits</u> were withheld, based on supplemental security income payments received from July 1990 through August 2003 (20 CFR 404.408b(b)). Further, the record indicates that monthly supplemental security income payments for July 1990 through August 2003 exceeded the amount of the monthly disability benefits within the same period.

. . . .

The Appeals Council then made the following pertinent Findings and Decision:

> The claimant is entitled to $2,885.39 in retroactive <u>disability benefits</u> due him for the period <u>July 1990 through August 2003.</u>
>
> . . . .
>
> The claimant is "not" entitled to any additional benefits with regard to the <u>application for disability benefits filed on August 16, 2001.</u>

Decision

> It is the decision of the Appeals Council that the claimant, based on <u>his application filed on August 16, 2001</u>, is not entitled to additional retroactive benefits for the period <u>July 1990 through August 2003.</u>

(Emphasis added).

## Discussion

The Commissioner moves the Court to dismiss Watson's complaint for failure to comply with the Court's order to identify his claims with more clarity and specificity. In the alternative, the Commissioner contends the Court does not have jurisdiction over this clam because Watson has failed to exhaust his administrative remedies. The undersigned agrees that Watson still has not supplied enough information for this Court to make a determination on the merits of his claim for benefits. He has, however, provided enough information for the Court to make a determination regarding its own jurisdiction in the matter.

Judicial review of the Commissioner's final decision is set forth in the Social Security Act, 42 U.S.C. §405, as follows:

> (g) Any individual, <u>after any final decision of the Commissioner of Social Security made after a hearing</u> to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the commissioner of social security may allow.

(emphasis added). The Fourth Circuit has held :

> Under 42 U.S.C. § 405(g), the district court has jurisdiction to review the Secretary's final denial of claims if the Secretary based denial on a hearing.

<u>Shrader v. Heckler</u>, 754 F.2d 142 (4th Cir. 1985).

Section 405(g) of Title 42 of the United States Code therefore authorizes judicial review only of a "final decision of the Commissioner of Social Security made after a hearing." The Regulations

7

provide that a claimant must complete a four-step administrative review process within certain time periods to obtain a judicially reviewable "final decision." 20 CFR §§ 404.900(a), 416.1400(a). This four-step process involves seeking an Initial Determination, Reconsideration, an Administrative Hearing before an Administrative Law Judge, and Appeals Council review. Id.

This is not a typical simple case of failure to exhaust. Watson had at least two different claims, each at different points in the review process. He had clearly been receiving SSI benefits since 1981. It is also clear he was awarded DIB benefits, including past-due benefits back to 1990. He clearly exhausted his administrative remedies as to the DIB claim as well as to the money that was withheld from his DIB award due to his having received SSI benefits. Plaintiff does not, however, argue those decisions. Instead, Watson argues that Judge Pileggi orally told him and his mother that he was due SSI money from 1979 or so "when he first started receiving SSI benefits." Watson himself further states in his argument that Judge Pileggi did not put anything in his written decision regarding those SSI benefits, nor did Watson receive those SSI benefits. According to Watson himself, however, Judge Pileggi clearly advised him to go back to SSA and file another complaint to try to obtain the past SSI benefits, if any. It is clear to the undersigned that Judge Pileggi was deciding only a DIB claim. It is also clear that the claim was based only on Watson's own earnings and work history, and not on his father's. The Appeals Council reiterated that the decision only referred to Watson's DIB claim and there was no SSI claim before it. The Appeals Council also directed that, if there were any past SSI benefits due, Watson would need to file another application to obtain them.

Watson may have, by this time, filed an application for the possible SSI benefits. At this time, however, it is clear to the undersigned United States Magistrate Judge that Watson has not

exhausted his administrative remedies as to any such claim. It is clear to the undersigned United States Magistrate Judge that the claim decided by Judge Pileggi was a DIB claim based on Watson's own disability. The possibility of Watson's being owed SSI money from 1979 or so, based on his father's earnings, which Judge Pileggi voiced at the hearing, was <u>not</u> included in the ALJ's own written decision for the simple reason that the issue was not properly before him. As Watson himself states, in his Response to the Court's <u>Roseboro</u> Notice:

> On June 16, 2006, my son had a hearing in Pittsburgh, Pennsylvania with Judge James Pieggi . . . . At the hearing Judge Pieggi told my son and myself, his mother, that he saw in Oliver's file that Oliver should have gotten more money in his check at the beginning of his SSI in 1979. Judge James Pieggi said that we were to go home & follow up with Social Security <u>& file another complaint with Social Security</u>. Judge Pieggi said that the Social Security would have to figure out what they owe Oliver for the <u>SSI</u>.

(Emphasis added).

The undersigned therefore finds Watson has not exhausted his administrative remedies as to his claim, if any, for additional SSI benefits. Section 405(g) of Title 42 of the United States Code authorizes judicial review only of a "final decision of the Commissioner of Social Security made after a hearing." There has not been a "final decision" of the Commissioner regarding Watson's claims for additional SSI prior to 1990. This Court is therefore without jurisdiction to review this case.

Although the undersigned is sympathetic to the *pro se* plaintiff's situation, Watson retains the remedy suggested by both the ALJ and the Appeals Council– that is, to file another complaint with SSA to obtain any past SSI benefits to which he may be entitled, and then follow the steps necessary to obtain a final decision regarding those benefits.

The undersigned therefore respectfully recommends Defendant's Motion to Dismiss Plaintiff's Complaint be granted.

# RECOMMENDED DECISION

For the reasons above stated, the undersigned recommends Defendant's "Motion to Dismiss Plaintiff's Complaint" [Docket Entry 21] be **GRANTED** and this case be dismissed and stricken from the Court's docket.

Any party may, within fourteen (14) days after being served with a copy of this Report and Recommendation, file with the Clerk of the Court written objections identifying the portions of the Report and Recommendation to which objection is made, and the basis for such objection. A copy of such objections should also be submitted to the Honorable Frederick P. Stamp, United States District Court Judge. Failure to timely file objections to the Report and Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such Report and Recommendation. 28 U.S.C. § 636(b)(1); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); Thomas v. Arn, 474 U.S. 140 (1985).

The Clerk of the Court is directed to send a copy of this Report and Recommendation to counsel of record and to Plaintiff *pro se* by certified mail.

Respectfully submitted this 5 day of March, 2010.

JOHN S. KAULL
UNITED STATES MAGISTRATE JUDGE